IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTIONS |
|---|---|---|
| v. | : | |
| DARRELL WILLIAMS | : | NOS. 97-241-2 & 97-386-1 |

February 25, 2013                                          Legrome D. Davis, J.

## MEMORANDUM

On January 30, 2013, this Court sentenced Defendant Darrell Williams to a term of imprisonment of twenty-four (24) months for a violation of the supervised release imposed in Criminal No. 97-241-02 and twenty-four (24) months for a violation of the supervised release imposed in Criminal No. 97-386-01, to be served consecutively. In utilizing our authority under 18 U.S.C. section 3583(e) to revoke supervised release, this Court determined that Williams's egregious conduct belied the categorization as Grade C violations and that due consideration of the relevant sentencing factors of 18 U.S.C. section 3553 required an upward variance from the United States Sentencing Guidelines in this instance. Below, we explain in greater detail the reasoning behind the imposition of this sentence.

I.     BACKGROUND

On July 28, 1998, Williams was sentenced by the Honorable Clarence C. Newcomer to a term of imprisonment for 151 months and supervised release for five years in Criminal No. 97-241-02 on one count of conspiracy to interfere with interstate commerce, one count of interference with interstate commerce by robbery, and the use of firearms during a crime of violence, and a term of imprisonment for 151 months and supervised release for five years in

1

Criminal No. 97-386-01 on one count of conspiracy to interfere with interstate commerce, one count of interference with interstate commerce by robbery, and the use of firearms during a crime of violence, to be served concurrently.[1] (Crim. No. 97-241-02, Doc. No. 88; Crim. No. 97-386-01, Doc. No. 9; Hearing Tr. 2:24–3:2, 3:21–24, Jan. 30, 2013). On April 21, 2011, the case was reassigned from the Honorable Clarence C. Newcomer to this Court. (Crim. No. 97-241-02, Doc. No. 142; Crim. No. 97-386-01, Doc. No. 10).

On May 5, 2012, this Court granted Probation Officer Derrick Luby's request that, based on his review of the personal financial statement submitted by Williams, this Court set Williams's restitution payment schedule at monthly installments of $5.00. (Crim. No. 97-241-02, Doc. No. 143; Crim. No. 97-386-01, Doc. No. 11).

On September 26, 2012, this Court granted Probation Officer Kenneth Bergmann's request to modify the terms and conditions of Williams's supervised release to require placement of Williams in a Residential Re-entry Center for a 120-day period. (Crim. No. 97-241-02, Doc. No. 144; Crim. No. 97-386-01, Doc. No. 12). This modification request, to which Williams consented, was based on an August 20, 2012, sighting of Williams outside of a jewelry store with a convicted felon, the subject of an active investigation into jewelry store robberies, as captured by surveillance by the Federal Bureau of Investigation and Philadelphia Police Department. (Id.; Hearing Tr. 4:25–5:11, Jan. 30, 2013).

On January 22, 2013, Probation Officer Bergmann again reported that Williams had violated the terms and conditions of his supervision by (1) entering the Sugar House Casino in

---

[1] Williams was also sentenced to pay restitution of $4,000.00 and a special assessment of $550.00 in both Criminal Nos. 97-241-02 and 97-386-01.

Philadelphia, Pennsylvania, on at least nine occasions since his entry into a Residential Re-entry Center without permission, as corroborated by video surveillance obtained from the casino, and (2) failing to report truthful and complete written financial reports, as evidenced by deposits of $177,295.81 and withdrawals of $201,956.38 on Williams's player's card at the Sugar House Casino. (Crim. No. 97-241-02, Doc. No. 145; Crim. No. 97-386-01, Doc. No. 13). A hearing concerning these violations was held on January 30, 2013. Williams expressly declined the opportunity to address this Court—and thereby provide insight into his objectively unreasonable conduct—and did not dispute the violations. (Hearing Tr. 12:10–13, 19:12–20:18, Jan. 30, 2013). Following presentations by Probation Officer Bergmann, the Government, and defense counsel, this Court revoked supervised release and imposed a term of imprisonment of twenty-four (24) months for violation of the supervised release imposed in Criminal No. 97-241-02 and twenty-four (24) months for a violation of the supervised release imposed in Criminal No. 97-386-01, to be served consecutively, with no subsequent period of supervised release. (Crim. No. 97-241-02, Doc. No. 151; Crim. No. 97-386-01, Doc. No. 19). This is the first revocation of Williams's term of supervised release.

II.     LEGAL STANDARD

Sentences imposed for violations of supervised release must be both procedurally and substantively reasonable. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). Procedural reasonableness is demonstrated by "meaningful consideration of the relevant statutory factors and the exercise of independent judgment." United States v. Black, 405 F. App'x 610, 613 (3d Cir. 2011) (quoting United States v. Grier, 475 F.3d 556, 571–72 (3d Cir. 2007) (en banc), cert. denied, 552 U.S. 848 (2007)) (not precedential). Some examples of procedural errors

include a failure to calculate or improper calculation of the United States Sentencing Guidelines range, failure to consider the factors of 18 U.S.C. section 3553(a), reliance on "clearly erroneous facts" in imposing a sentence, and "fail[ure] to adequately explain the chosen sentence[—] including an explanation for any deviation from the Guidelines range." Id. (quoting United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009). "Substantive reasonableness inquires into whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." United States v. Farrell, 445 F. App'x 506, 507 (3d Cir. 2011) (quoting United States v. Young, 634 F.3d 233, 237 (3d Cir. 2011)) (not precedential). A procedurally reasonable sentence will be deemed substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Black, 405 F. App'x at 613 (quoting Tomko, 562 F.3d at 568). "The party challenging the sentence bears the burden of proving the sentence's unreasonableness" based on "the totality of the circumstances." Id. (citing Tomko, 562 F.3d at 567).

III.   PROCEDURAL REASONABLENESS

18 U.S.C. section 3583(e) gives courts the authority to terminate, extend, or revoke a term of supervised release "after considering the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e) (2012). These enumerated factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need . . . to afford adequate deterrence to criminal conduct"; "the need . . . to protect the public from further crimes of the defendant"; "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other

4

correctional treatment"; "the kinds of sentence and the sentencing range"; "pertinent policy statement[s]"; "the need . . . to avoid unwarranted sentence disparities"; and "the need to provide restitution to any victims of the offense." 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), (a)(7) (2012).

Williams did not contest these violations and declined the opportunity to offer an explanation for his conduct. Therefore, Williams offered no demonstration of contrition for his acts and did not offer any mitigating circumstances, except for defense counsel's assertion that Williams "has a significant gambling problem," (Hearing Tr. 15:1, Jan. 30, 2013).

Prior to imposing sentence, this Court expressly considered the relevant sentencing factors.[2] In terms of the nature and circumstances of the offense and the history and characteristics of the defendant, this Court determined that Williams's conduct exhibited a fundamental violation of trust and manipulation of this Court. (Id. at 22:16–22). Such conduct is extremely serious, since "the theory behind sanctioning violations of supervised release is to sanction primarily the defendant's breach of trust." United States v. Williams, 387 F. App'x 282,

---

[2] In the instant matter, there is no indication that Williams has any specific educational, vocational, or medical needs that merit special consideration. Also, this Court's review of the relevant policy statements did not yield any policy statements that either recommended or advised against departure from the Guidelines range given the facts in this case; however, as this Court noted at the hearing, we do not believe that the Sentencing Commission, in promulgating the Guidelines, envisioned conduct as egregious as Williams. (See Hearing Tr. 24:1–3, Jan. 30, 2013). As discussed further infra, Williams' conduct, at its core, demonstrated a profound disregard for the fundamental truth that supervision is a reciprocal process intended to assist the offender in his efforts to reintegrate into society; rather, Williams engaged in conduct designed to deceive this Court and manipulate the process. For this same reason, this Court doubts that others on supervised release engage in such egregious conduct. Therefore, little weight is given to the need to avoid unwarranted sentence disparities. Finally, although this Court recognizes the need for Williams to pay restitution and, therefore, leaves in place those financial responsibilities upon Williams, the need to provide restitution does not provide any particular direction in this case. Williams's failure to report funds and request for a lower payment schedule based on false financial statements, (see Hearing Tr. 8:17–22, 9:2–17, Jan. 30, 2013), indicates that he is less than diligent in his efforts to make restitution. For these reasons, this Court determined that these factors were not particularly relevant in imposing sentence in this matter.

288–89 (3d Cir. 2010) (citing United States v. Dees, 467 F.3d 847, 853 (3d Cir. 2006)) (not precedential). This Court expressly noted the numerous efforts of the Probation Office and this Court to help Williams rehabilitate himself: Upon recommendation of the Probation Office, this Court had reduced Williams's restitution payments from $10.00 per month to $5.00 per month out of concern for his finances, (Hearing Tr. 8:13–22, 21:22–24, Jan. 30, 2013) and, upon proof that Williams, who was on supervised release for two armed robberies, was seen associating with a known felon and suspected jewelry store robber, placed Williams, with his consent, in a Residential Re-entry Center for a 120-day period so as to allow him to work towards rehabilitation, (id. at 4:21–5:13). Yet, despite these efforts to aid his reintegration into society, Williams responded by impermissibly going to the casino to gamble when he was supposed to be at work, (id. at 6:11–20, 7:15–21), and providing financial affidavits showing minimal amounts of money while depositing $177,295.81 into and withdrawing $201,956.38 from his player's card account at Sugar House Casino over the course of one year, (id. at 9:4–9, 9:13–19). This conduct alone is serious, but, when combined with the history of the efforts of this Court and the Probation Office to aid Williams in his rehabilitation, Williams's conduct is truly egregious, reflecting a profound breach of trust. (See id. at 22:17).

This Court further found that this conduct indicated that Williams did not have a genuine desire to rehabilitate himself and, therefore, required additional measures to adequately deter him and others from future criminal conduct. (See id. at 22:21–23:3). See also United States v. Farrell, 445 F. App'x 506, 508–09 (3d Cir. 2011) (finding that the district court "reasonably concluded that a significant period of incarceration would be necessary to get [the defendant's] attention and prevent him from further recidivism," when the violations indicated a "lack of

6

respect for the court") (not precedential). Again, this Court notes that, prior to the instant violations, Williams, who was serving supervised release for two armed robberies, had already been placed in a Residential Re-entry Center for a 120-day period after being seen with a known felon and suspected jewelry store robber. Therefore, to the extent that Williams's conduct indicated a need for additional deterrence, such measures would also serve to protect the public, as Williams was convicted of violent offenses.

Finally, this Court carefully considered the kinds of sentences and the applicable sentencing range. This Court confirmed and was clearly aware of the statutory maximums and guideline ranges for the violations of the two supervised release terms imposed. (Hearing Tr. 14:9–14, 14:23–25, Jan. 30, 2013). Further, this Court not only considered, but had already approved an alternative interim sanction in the form of placing Williams in a Residential Re-entry Center and permitting him to work. (See id. 15:25–16:3; Crim. No. 97-241-02, Doc. No. 144; Crim. No. 97-386-01, Doc. No. 12). Finding that this alternative interim sanction clearly did not work, since Williams had violated his supervised release by going to the casino instead of to work, this Court determined that the more serious measure of incarceration was required. Although this Court agreed with the Probation Office, the Government, and defense counsel as to the correct applicable sentencing range, we explicitly found that this type of unprecedented and egregious violation simply could not have been contemplated by the Sentencing Commission when promulgating the Guidelines. (See Hearing Tr. 24:2–4, Jan. 30, 2013). Williams' conduct, at its core, demonstrated a profound disregard for the fundamental truth that supervision is a reciprocal process intended to assist the offender in his efforts to reintegrate into society. If the court and the offender are to enjoy any measure of success, a genuine effort is required from the offender. Sadly,

from the inception of his term of supervised release, Williams appears to have approached supervision as if it were a contest of deceit, manipulation, and subterfuge.

Since this Court clearly explained our decision to vary upward, citing ample evidence and referencing the relevant sentencing factors, the sentence imposed is procedurally reasonable.

IV.     SUBSTANTIVE REASONABLENESS

For those terms of supervised release that are revoked due to class C felonies, as is the case here, the maximum period of imprisonment permitted by statute is two years "on any such revocation." 18 U.S.C. § 3583(e) (2012).[3] Further, the Third Circuit has previously held that revocation imprisonment terms may run consecutively, even when the sentences for the underlying offenses ran concurrently, with a separate sentence for each term of supervised release revoked by the court. Dees, 467 F.3d at 851–52. Therefore, this Court's sentence of twenty-four (24) months for each of the two revoked terms of supervised release in this matter, to be served consecutively, falls within the permissible statutory range and accords with Third Circuit precedent. Furthermore, as the sentence imposed was procedurally reasonable, see discussion supra Part III, the sentence imposed is also substantively reasonable, since Williams cannot

---

[3] Because Williams committed the offenses underlying his terms of supervised release before 2003, any prior time served in incarceration for earlier violations of supervised release would have to be subtracted to determine the remaining period available under the statute for imposing sentence for the instant violations. See United States v. Williams, 675 F.3d 275, 279–80 (3d Cir. 2011) (finding no such subtraction requirement following the 2003 amendment of 18 U.S.C. section 3583(e)(3)); see also United States v. Epstein, 620 F.3d 76, 79 (2d Cir. 2010) (per curiam) (noting that, prior to the 2003 amendment, courts "interpreted [that section] to allow defendants to 'accumulate' prison time served for multiple revocations of supervised release based on the same underlying offense" and credit such time towards the statutory maximum term). However, as Williams has never previously served any jail time for violations of supervised releases, no subtraction is required, and each revocation of supervised release is subject to the full statutory maximum of two years. (See Hearing Tr. 13:20–14:3, Jan. 30, 2013).

demonstrate that "no reasonable sentencing court" would have imposed this same sentence for the reasons stated by this Court, <u>Black</u>, 405 F. App'x at 613 (quoting <u>Tomko</u>, 562 F.3d at 568).

For the foregoing reasons, the sentence imposed by this Court upon Williams for violation of his supervised release is both procedurally and substantively reasonable.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.